Slip Op. 14-148

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HUSTEEL CO., LTD., <br><br> Plaintiff, <br><br> NEXTEEL CO., LTD. and HYUNDAI HYSCO, <br><br> Consolidated Plaintiffs, <br><br> ILJIN STEEL CORPORATION, AJU BESTEEL CO., LTD., and SEAH STEEL CORP., <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> UNITED STATES STEEL CORPORATION, BOOMERANG TUBE LLC, ENERGEX TUBE (A DIVISION OF JMC STEEL GROUP), TEJAS TUBULAR PRODUCTS, TMK IPSCO, VALLOUREC STAR, L.P., WELDED TUBE USA INC., and MAVERICK TUBE CORPORATION, <br><br> Defendant-Intervenors. | Before: Jane A. Restani, Judge <br><br> Consol. Court No. 14-00215 |

**OPINION**

[Motions to enjoin liquidation of entries pending challenges to antidumping investigation granted.]

Dated: December 18, 2014

     Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, Mary S. Hodgins, and Sarah S. Sprinkle, Morris, Manning & Martin, LLP, of Washington, DC, for plaintiff.

     J. David Park, Nazakhtar Nikakhtar, Henry D. Almond, Yujin K. McNamara, and Yun H. Lee, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, for consolidated plaintiffs.

     Joel D. Kaufman, Richard O. Cunningham, Alice A. Kipel, and Henry N. Smith, Steptoe & Johnson LLP, of Washington, DC, for plaintiff-intervenor ILJIN Steel Corporation.

     Neil R. Ellis, Dave M. Wharwood, Rajib Pal, and Shawn M. Higgins, Sidley Austin, LLP, of Washington, DC, for plaintiff-intervenor AJU Besteel Co., Ltd.

     Jeffrey M. Winton, Law Office of Jeffrey M. Winton PLLC, of Washington, DC, for plaintiff-intervenor SeAH Steel Corp.

     Melissa M. Devine and Emma E. Bond, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., and Mykhaylo A. Gryzlov, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC, for defendant.

     Jeffrey D. Gerrish, Robert E. Lighthizer, and Jamieson L. Greer, Skadden Arps Slate Meagher & Flom, LLP, of Washington, DC, for defendant-intervenor United States Steel Corporation.

     Roger B. Schagrin, John W. Bohn, and Paul W. Jameson, Schagrin Associates, of Washington, DC, for defendant-intervenors Boomerang Tube LLC, Energex Tube, Tejas Tubular Products, TMK IPSCO, Vallourec Star, L.P., and Welded Tube USA Inc.

     Robert E. DeFrancesco, III., Alan H. Price, Adam M. Teslik, and Laura El-Sabaawi, Wiley Rein, LLP, of Washington, DC, for defendant-intervenor Maverick Tube Corporation.

     Restani, Judge: Before the court are the motions for injunctions of liquidation and eventual liquidation in accordance with the results of litigation filed by plaintiff Husteel Co., Ltd., consolidated plaintiffs Nexteel Co., Ltd. and Hyundai HYSCO, and plaintiff-intervenors ILJIN Steel Corporation, AJU Besteel Co., Ltd., and SeAH Steel Corp. (collectively, "movants"). Movants seek to enjoin the defendant, together with the delegates, officers, agents,

and employees of the U.S. Department of Commerce ("Commerce") and U.S. Customs and Border Protection ("Customs"), from liquidating at rates applicable at the time of entry, certain unliquidated entries covered by Commerce's final determination in <u>Certain Oil Country Tubular Goods from the Republic of Korea: Final Determination of Sales at Less than Fair Value and Negative Final Determination of Critical Circumstances</u>, 79 Fed. Reg. 41,983 (Dep't Commerce July 18, 2014) ("<u>Final Determination</u>").  Defendant consents to the motions.  Defendant-intervenors United States Steel Corporation ("U.S. Steel") and Maverick Tube Corporation ("Maverick") oppose the motions.  The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012).  For the following reasons, the motions are granted.

## OVERVIEW

Movants are Korean producers and exporters of oil country tubular goods, that challenge various aspects of Commerce's <u>Final Determination</u> in the antidumping investigation covering oil country tubular goods from Korea.  In their motions, they seek to enjoin liquidation of entries of their merchandise covered by the <u>Final Determination</u> during the pendency of this court action in order to ensure that they receive any potential benefits that might result from judicial review of the <u>Final Determination</u>.  According to movants, the injunctions are necessary because liquidation of their entries will moot their challenges to the <u>Final Determination</u>, at least as it pertains to the entries that are liquidated.  <u>See</u> <u>Zenith Radio Corp. v. United States</u>, 710 F.2d 806, 810 (Fed. Cir. 1983) (explaining that once liquidation occurs, a subsequent court decision on the merits can have no effect on the antidumping duties assessed on the liquidated entries, even if the duties ultimately are determined to be erroneous).  U.S. Steel and Maverick argue that the injunctions are unwarranted.

Consol. Court No. 14-00215                                                                                      Page 4

## DISCUSSION

The court "may enjoin the liquidation of some or all entries of merchandise covered by a determination of . . . [Commerce] . . . , upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances."  19 U.S.C. § 1516a(c)(2).  The purpose and effect of granting such an injunction is to preserve the status quo during the pendency of the judicial proceedings in order to ultimately provide parties any relief the court grants.  See 19 U.S.C. § 1516a(e)(2) (providing that "entries, the liquidation of which was enjoined under subsection (c)(2) of this section, shall be liquidated in accordance with the final court decision in the action"); Ugine & ALZ Belg. v. United States, 452 F.3d 1289, 1297 (Fed. Cir. 2006).  In deciding whether to enjoin liquidation, the court considers the following factors: 1) whether the movant will suffer irreparable harm if relief is not granted; 2) the movant's likelihood of success on the merits; 3) the balance of equities between the parties; and 4) whether an injunction is in the public interest.  See, e.g., Wind Tower Trade Coalition v. United States, 741 F.3d 89, 95 (Fed. Cir. 2014); Ugine, 452 F.3d at 1292.  The court has traditionally applied a "sliding scale" approach to this determination, whereby no single factor will be treated as necessarily dispositive, and the weakness of the showing on one factor may be overcome by the strength of the showing on the others.  See Ugine, 452 F.3d at 1292–93; Corus Grp. PLC v. Bush, 26 CIT 937, 942, 217 F. Supp. 2d 1347, 1353–54 (2002).  The court will discuss each factor in turn.

1.  **Irreparable Harm**

The first factor that the court considers is the potential irreparable harm to the movants should the injunctions be denied.  Although the court is to consider the four factors described

Consol. Court No. 14-00215                                                                                          Page 5

above, this factor traditionally has been given the greatest importance.  See Corus Grp., 26 CIT at 942, 217 F. Supp. 2d at 1354 (collecting cases).  The original legislative history of 19 U.S.C. § 1516a(c)(2) suggests that the court will consider the factors to ensure that liquidation is enjoined only in "extraordinary circumstances."  S. Rep. No. 96-249, at 248–49, 253 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 634, 639.  Such history no longer accurately reflects the current law, judicial precedent, and agency practice.

Because of the unique nature of antidumping and countervailing duty challenges, the court routinely enjoins liquidation to prevent irreparable harm to a party challenging the antidumping or countervailing duty rate.  See Wind Tower Trade Coalition, 741 F.3d at 95 ("As observed by the CIT, in antidumping and countervailing duty cases preliminary[1] injunctions against liquidation have become almost automatic due to the retrospective nature of U.S. trade remedies, the length of the judicial review process, and the cruciality of unliquidated entries for judicial review." (internal quotation marks and brackets omitted)).  As explained in Zenith, once entries are liquidated, there is no provision permitting reliquidation if the court later determines that the duty rates assessed on those entries were erroneous.  710 F.2d at 810.  A party challenging the duty rate is thus deprived of its right to judicial review if the entries are liquidated.  See id.  Respondents might be subjected to duties that are unwarranted under the trade laws, and petitioners have "a strong, continuing, commercial-competitive stake in assuring

---

[1] "Preliminary" is a proper description of only part of the injunctions sought here, and it is to this aspect of the injunctions that the court's Rule 56.2 refers.  The form of injunction sought here, which is commonly utilized, appears to permanently enjoin liquidation not in accordance with the conclusive results of the litigation pursuant to statutory rights.  See attached injunction and 19 U.S.C. § 1516a(e).

that its competing importers will not escape the monetary sanctions deliberately imposed by Congress." See id. These concerns led the court in Zenith to conclude "that the consequences of liquidation . . . constitute irreparable injury." Id. Suspension of liquidation thus is necessary to ensure effective judicial review of agency action and to guarantee that the rates are consistent with the outcome of the litigation. See 19 U.S.C. § 1516a(e)(2) (providing that "entries, the liquidation of which was enjoined [by court order], shall be liquidated in accordance with the final court decision in the action").

U.S. Steel and Maverick do not disagree with the premise that liquidation can constitute irreparable harm. Rather, U.S. Steel and Maverick argue that there is no immediate threat of liquidation, and thus there is no irreparable harm that is imminent to justify an injunction. They note that movants are challenging Commerce's final determination in an antidumping investigation. Under the U.S. trade laws, the duty rates determined in an investigation set the cash deposit rates for the imported merchandise. See OKI Elec. Indus. Co. v. United States, 11 CIT 624, 627, 669 F. Supp. 480, 482 (1987). The final rates are not settled until Commerce completes any requested administrative review of the antidumping order covering those entries. Id. Parties may request a review twelve months after the order is issued, and the review itself lasts about a year. 19 U.S.C. § 1675(a); OKI Elec. Indus., 11 CIT at 627, 669 F. Supp. at 483. Upon completion of the review, Commerce issues liquidation instructions to Customs. See 19 U.S.C. § 1675(a). According to U.S. Steel and Maverick, because Commerce will not issue liquidation instructions until at least a year from the date of the Final Determination (i.e., September 2015), movants are not faced with any prospect of irreparable harm at present, and the motions therefore should be denied. The court disagrees.

Movants are required to show a "presently existing, actual threat" of injury. Zenith, 710 F.2d at 809. A confluence of considerations leads the court to conclude that the injunctions are proper at this time, even if the threat of injury is not "imminent" in the same sense it is following an administrative review. First, the court notes that under current law, the rate established in an investigation can be used as the final assessment rate if no party requests a review of the affected entries. 19 C.F.R. §§ 351.212(c), 351.213(b) (2014). U.S. Steel's and Maverick's arguments that the injunctions are premature might have had greater force when the court first was given the power to grant injunctions of liquidation, as the antidumping statute required an administrative review every year. See 19 U.S.C. § 1675 (1982). The law was changed in 1984, however, to require administrative reviews only when an interested party requests one. See Antidumping and Countervailing Duties; Administrative Reviews on Request; Transition Provisions, 50 Fed. Reg. 32,556, 32,556 (Dep't Commerce Aug. 13, 1985). Today, when no review is requested, entries are liquidated at the cash deposit rate without further notice. 19 C.F.R. § 351.212(c). Ensuring that movants receive the full benefit of their judicial challenge to the investigation, and possibly to the order itself, may obviate the need for future administrative reviews, or may settle issues that are likely to reoccur in future reviews without the need for additional litigation. See Ipsco, Inc. v. United States, 12 CIT 676, 680–81, 692 F. Supp. 1368, 1372–73 (1988) (discussing these considerations). Issuing the injunctions at this point also protects movants from any negative ramifications of an erroneous liquidation, which may become final if not protested in a timely manner and would moot the movants' challenges to the antidumping duty rates set in the investigation. See 19 U.S.C. § 1514; AK Steel Corp. v. United States, 27 CIT 1382, 1387–89, 281 F. Supp. 2d 1318, 1322–23 (2003) (treating erroneous

liquidation in violation of court-issued injunction as void); LG Elecs. U.S.A., Inc. v. United States, 21 CIT 1421, 1428–29, 991 F. Supp. 668, 675–76 (1997) (same).

Of potentially more pressing concern regarding the timing of the motions is U.S. Court of International Trade Rule 56.2, pursuant to which the relevant motions were made. That rule provides that "[a]ny motion for a preliminary injunction to enjoin the liquidation of entries that are the subject of the action must be filed by a party to the action within 30 days after service of the complaint, or at such later time, for good cause shown." USCIT R. 56.2(a). Rule 56.2 instructs parties that a motion for an injunction should normally be filed early in the proceedings, unless extenuating circumstances are present. The rule makes no exception for investigation cases, rather than administrative review cases, where an early injunction clearly is needed. An injunction likely will be needed at some point in the litigation to prevent liquidation partially or wholly mooting the case or to prevent unnecessary administrative reviews. Thus, a party may not be justified in ignoring the applicable 30-day deadline just because the harm will occur sometime down the road. What constitutes "good cause" for delay has not been established. By waiting until immediately before the deadline to request an administrative review runs to request an injunction, a party runs the risk that it will be barred from obtaining the injunction by a strict interpretation of the court rule.

Requiring movants to wait until Commerce issues its final results in an administrative review, as U.S. Steel and Maverick propose, also unnecessarily places the movants at risk stemming from Commerce's 15-day policy for issuing liquidation instructions. Commerce's policy is to issue liquidation instructions within 15 days of the final results of an administrative review or, presumably, the expiration of the time to request a review. See Tianjin Mach. Imp. &

Exp. Corp. v. United States, 28 CIT 1635, 1649–50, 353 F. Supp. 2d 1294, 1309 (2004). Commerce does not notify interested parties when the liquidation instructions actually are issued. Mittal Steel Galati S.A. v. United States, 31 CIT 730, 739 n.7, 491 F. Supp. 2d 1273, 1282 n.7 (2007). The propriety of the 15-day procedure is questionable, as the court has held it to be unlawful in certain cases. See SFK USA Inc. v. United States, 800 F. Supp. 2d 1316, 1327–28 (CIT 2011) (issuing a declaratory judgment that Commerce's use of the 15-day procedure was unlawful); Tianjin, 28 CIT at 1650–51, 353 F. Supp. 2d at 1309–10 (holding that Commerce's 15-day procedure is not in accordance with law). But see Mittal, 31 CIT at 737–38, 491 F. Supp. 2d at 1281 (expressing disapproval but holding that the 15-day procedure is a reasonable interpretation of the statute in facial challenge to the procedure). Under Commerce's unwise, and possibly unlawful, 15-day procedure, the movants will have very little time to file and obtain an injunction once the final results are effective. As the court stated in Mittal, the 15-day procedure creates "the possibility [that] Commerce and Customs may act so quickly, as to practically foreclose interested parties from obtaining judicial review of the subject entries pursuant to 19 U.S.C. § 1516a." 31 CIT at 738, 491 F. Supp. 2d at 1281 (internal quotation marks and citation omitted).

  For the foregoing reasons, the court determines that based on the first factor, movants are faced with a sufficiently imminent and serious harm to warrant issuance of the statutory injunctions sought. The court further emphasizes that delaying the injunctions likely will invite trouble, and neither U.S. Steel nor Maverick has suggested any reason demonstrating that it would be prejudicial or otherwise inequitable to grant the injunctions at this point in the proceedings. Assuming arguendo that harm is not imminent in the sense normally associated

with injunctive relief in advance of resolution of the merits, the remaining factors also support granting relief and the court now proceeds to discuss those factors.

**2.      Likelihood of Success on the Merits**

When the irreparable harm factor tilts decidedly in favor of the movant, the burden of showing likelihood of success on the merits is lessened.  <u>Qingdao Taifa Grp. Co. v. United States</u>, 581 F.3d 1375, 1378–79 (Fed. Cir. 2009); <u>Ugine</u>, 452 F.3d at 1292–93.  In such circumstances, "it will ordinarily be sufficient that the movant has raised serious, substantial, difficult and doubtful questions that are the proper subject of litigation," <u>Nmb Sing. v. United States</u>, 24 CIT 1239, 1245, 120 F. Supp. 2d 1135, 1140 (2000) (internal quotation marks omitted), or that the movant "has at least a fair chance of success on the merits," <u>Wind Tower Trade Coalition</u>, 741 F.3d at 96.  <u>See also</u> <u>Ugine</u>, 452 F.3d at 1294–95 (refusing to deny injunction when ultimate outcome on the merits was not "clear-cut").  Movants have raised a number of important issues in their complaints that are of the kind commonly raised, and successfully litigated, before the court.  The parties generally have devoted little effort in their respective briefs arguing the relative merits of the claims.  The court notes, however, that neither U.S. Steel nor Maverick has cited any legal authority or record evidence suggesting that the claims raised are so dubious that the injunctions should be denied.  <u>Compare</u> <u>Wind Tower Trade Coalition</u>, 741 F.3d at 94, 100 (upholding denial of injunction when movant's legal position on merits was directly contrary to caselaw on point).  The court is satisfied, at this point in the proceedings, that the movants have raised "serious, substantial, difficult and doubtful questions that are the proper subject of litigation," <u>Nmb Sing.</u>, 24 CIT at 1245, 120 F. Supp. 2d at 1140, and that the movants have "at least a fair chance of success on the merits," <u>Wind Tower Trade</u>

Coalition, 741 F.3d at 96.

**3.      Balance of the Equities**

The third factor the court considers is the balance of the equities.  As explained, movants are threatened with the possibility of having their entries liquidated with duties that they claim are unlawful, without judicial recourse.  Any burden to the government is likely to be minimal, as cash deposits at the rates set in the Final Determination will continue, until changed by the ultimate results of litigation.[2]  Should the injunctions be granted, the only harm to the government appears to be the possible inconvenience occasioned by the delay in liquidation.  See OKI Elec. Indus., 11 CIT at 632–33, 669 F. Supp. at 486.  Notably, the defendant has consented to the movants' motions.  In their oppositions to the motions for injunctions, U.S. Steel and Maverick fail to even suggest that they would be harmed by the injunctions.  The court additionally notes that one of the central concerns Congress expressed in the legislative history in allowing injunctions was the detrimental effects of enjoining liquidation on commercial certainty.  S. Rep. No. 96-249, at 253, 1979 U.S.C.C.A.N. at 638.  These concerns appear to be most naturally associated with respondents and their importers, whose entries are kept in limbo during litigation.  These parties are left to wonder whether they will receive refunds on the deposits, or whether additional duties will be owed.  Because cash deposits continue to be collected, domestic producers are not nearly as prejudiced by the commercial uncertainty that results from suspending liquidation.  In this case, the parties most likely to be prejudiced by

---

[2] This litigation, rather than affecting the status of the underlying order, may affect deposit rates.  If the final results of an administrative review issue before this litigation is complete, new deposit rates may be set.  What effect these injunctions would have on preserving the results of this litigation in such a circumstance need not be decided at this juncture.

suspension of liquidation (i.e., the respondents) are the parties moving for an injunction, and Congress's concerns expressed in the initial legislative history are thus further dampened in this case. Accordingly, the court finds that the balance of equities tips in the favor of movants.

**4.      Public Interest**

Finally, the court considers whether granting the injunctions would be against public policy. Granting the injunctions would ensure that movants are able to obtain meaningful relief in challenging the Final Determination. Securing judicial review and ensuring that Commerce properly administers the antidumping laws are in the public interest. See Nmb Sing., 24 CIT at 1245, 120 F. Supp. 2d at 1141 ("It is well settled that the public interest is served by ensuring that [Commerce] complies with the law, and interprets and applies the international trade statutes uniformly and fairly." (internal quotation marks and brackets omitted)); Timken Co. v. United States, 6 CIT 76, 82, 569 F. Supp. 65, 71 (1983) ("Short-circuiting [a party's statutory right to a judicial hearing following an averse agency determination] by allowing the subject matter to escape the reach of a reviewing court cannot be in the public interest."). Securing judicial review of the Final Determination at this time also promotes judicial efficiency, in that issues that could reoccur in later reviews can be judicially reviewed before any possible errors are repeated. It is also possible that future administrative reviews might be avoided altogether. See Ipsco, 12 CIT at 680–82, 692 F. Supp. at 1372–73; OKI Elec. Indus., 11 CIT at 632–33, 669 F. Supp. at 486 ("The public interest will be better served by issuing rather than denying the injunction since unnecessary time consuming and costly administrative reviews will be avoided by the government."). The court therefore concludes that the injunctions accord with public policy.

## **CONCLUSION**

On balance, the four factors support granting the injunctions. As in most cases before the court, the movants seeking injunctions against liquidation will be protected from their judicial challenges being mooted, while there will be little, if any, harm to the other parties by granting the injunctions. The court accordingly grants the movants' motions. One typical injunction is attached hereto for clarity. Individual orders regarding the other movants' motions will enter separately.

Additionally, the court wishes to commend the defendant for consenting to these motions. As explained, the government will not be harmed in any meaningful way by the granting of the motions, whereas movants have a legitimate interest in the injunctions being granted. The government seems to have concluded, quite wisely, that this is an issue that it has no need to fight over, thereby attempting to save everyone time, expense, and effort. Unfortunately, U.S. Steel and Maverick did not take the same stance, even though the same calculus would seem to apply, as they similarly do not face any harm by the granting of the injunctions. The court presumes that counsel for U.S. Steel and Maverick, as officers of the court, had reason to oppose the motions beyond annoying the movants and increasing litigation expenses, although what those reasons were was not made clear to the court in the opposition papers. Moreover, the court wonders whether U.S. Steel and Maverick's position might be somewhat short-sighted. Although an administrative suspension might be in place, mistakes can happen. For example, Customs could erroneously liquidate entries in contravention of Commerce's instructions. Under this hypothetical, importers presumably could protest under 19 U.S.C. § 1514 and challenge the liquidation. Domestic producers such as U.S. Steel and

Consol. Court No. 14-00215                                                                                                       Page 14

Maverick, however, do not have the same protest rights under 19 U.S.C. § 1514.  See Cemex, S.A. v. United States, 384 F.3d 1314, 1323 n.9 (Fed. Cir. 2004) (holding that § 1514 does not provide an avenue for a domestic producer to contest Customs' improper liquidation of entries). Unless voluntarily undone by Customs, liquidation under that scenario would appear to be final, and the domestic producers' ability to obtain relief in their own challenge to an antidumping determination (whether in this case or in future cases) likely would be lost.  On the other hand, actions taken by Customs or Commerce in contravention of a court-ordered injunction have been treated as void and do not deprive the court of jurisdiction over the challenge.  See AK Steel, 27 CIT at 1387–89, 281 F. Supp. 2d at 1322–23; LG Elecs. U.S.A., 21 CIT at 1428–29, 991 F. Supp. at 675–76.  In this hypothetical, it would appear the domestic producers have a stronger interest in having an injunction granted, as they otherwise do not have the same protections as importers from the risks described.  Such a case is not before the court at this time, and the foregoing is merely speculation as to the outcome under that hypothetical.  The court simply wishes to stress that parties should be thoughtful in deciding which battles to fight and be mindful of the possible ramifications of their positions in future cases.  Injunctions will issue.

                                                        /s/ Jane A. Restani  
                                                       Jane A. Restani, Judge

Dated: December 18, 2014  
       New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HUSTEEL CO., LTD.,**<br><br>　　　　　　　　Plaintiff,<br><br>**NEXTEEL CO., LTD. and HYUNDAI HYSCO,**<br><br>　　　　　　　　Consolidated Plaintiffs,<br><br>**ILJIN STEEL CORPORATION, AJU BESTEEL CO., LTD., and SEAH STEEL CORP.,**<br><br>　　　　　　　　Plaintiff-Intervenors,<br><br>　　　　v.<br><br>**UNITED STATES,**<br><br>　　　　　　　　Defendant,<br><br>**UNITED STATES STEEL CORPORATION, BOOMERANG TUBE LLC, ENERGEX TUBE (A DIVISION OF JMC STEEL GROUP), TEJAS TUBULAR PRODUCTS, TMK IPSCO, VALLOUREC STAR, L.P., WELDED TUBE USA INC., and MAVERICK TUBE CORPORATION,**<br><br>　　　　　　　　Defendant-Intervenors. | **Before: Jane A. Restani, Judge**<br><br>**Consol. Court No. 14-00215** |

## **ORDER**

Upon consideration of Plaintiff Husteel Co., Ltd.'s ("Husteel") Partial Consent Motion for Preliminary Injunction, and all other papers and proceedings herein, it is hereby:

ORDERED that Plaintiff's Motion is GRANTED; and it is further

ORDERED that Defendant, United States, together with its delegates, officers, agents, and servants, including employees of the U.S. Customs and Border Protection and the U.S. Department of Commerce, is enjoined during the pendency of this litigation, including any appeals, from issuing instructions to liquidate or making or permitting liquidation of any entries of oil country tubular goods from the Republic of Korea:

(i) that were produced and/or exported by Husteel Co., Ltd.;

(ii) that were the subject of the United States Department of Commerce's final determination in *Certain Oil Country Tubular Goods From the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances*, 79 Fed. Reg. 41,983 (Dep't of Commerce July 18, 2014); and

(iii) that were entered, or withdrawn from warehouse, on or after July 18, 2014 up to and including September 30, 2015; and it is further

ORDERED that the entries subject to this injunction shall be liquidated only in accordance with the final court decision in this action, including all appeals and remand proceedings, as provided in 19 U.S.C. § 1516a(e).

SO ORDERED.

  /s/ Jane A. Restani
Jane A. Restani, Judge

Dated: December 18, 2014
      New York, New York